# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CECILIA LOPEZ, | ) |
|              **Plaintiff,** | ) |
| vs. | )   No. 09-CV-757-TCK-FHM |
| THE CITY OF TULSA, OKLAHOMA, an Oklahoma Municipal Corporation; and CHRISTOPHER MOUDY, | ) |
|              **Defendants.** | ) |

## OPINION AND ORDER

Before the Court are (1) Defendant City of Tulsa's ("City of Tulsa") Motion to Dismiss (Doc. 9); (2) City of Tulsa's Motion for Judicial Notice (Doc. 9); (3) Defendant Christopher Moudy's ("Moudy") Motion to Dismiss (Doc. 26); and (4) Moudy's Motion Requesting the Court to Judicially Notice Nolo Contendere Plea in State Court (Doc. 26).

**I.     Background**

The following facts are alleged in Plaintiff's Amended Petition. On September 15, 2007, City of Tulsa employees, including Moudy, entered a residence without a warrant, and, after Plaintiff protested said actions, wrongfully arrested Plaintiff on "bogus charges" in the presence of Plaintiff's minor child, R.L. (Am. Pet. ¶ 6.) Moudy then abandoned R.L. "at the scene and failed to provide for her care." (*Id.* ¶ 7.)

As a result of these events, Plaintiff sent a Notice of Tort Claim to the City of Tulsa City Clerk on September 15, 2008 ("Notice") and thereafter brought suit against Moudy and the City of Tulsa ("Defendants") in the District Court for Tulsa County, State of Oklahoma for "false imprisonment, false arrest, reckless infliction of emotional distress, general negligence, and negligent supervision." (*Id.* ¶ 1.) Plaintiff also asserted a claim pursuant to 42 U.S.C. § 1983 for

the violation of her constitutional rights under the First, Fourth, and Fourteenth Amendments to Constitution of the United States ("§ 1983 claim") (*See id.*) In bringing these claims, Plaintiff made the following specific allegations:

> 8. The actions of [D]efendant Moudy were negligent, reckless, taken with deliberate indifference and/or intentional.
>
> 9. The actions of [D]efendant Moudy were in retaliation for [P]laintiff speaking out and protesting the actions of the Tulsa police in wrongfully entering an apartment without a warrant and in otherwise questioning the actions of the police.
>
> 10. Further, the policies and practices of the City of Tulsa regarding entry into a home and dealing with citizens in this circumstance were negligent, reckless and/or were deliberately indifferent to the rights of citizens, including [P]laintiff.
>
> 11. Moreover[,] the training and supervision of the police officers, including [D]efendant Moudy, by the City of Tulsa were also negligent, reckless and/or taken with deliberate indifference.
>
> 12. Further, the City of Tulsa has ratified the actions of [D]efendant Moudy so as to be responsible for his intentional and/or deliberately indifferent wrongful acts with regard to [P]laintiff.

(*Id.* ¶¶ 8-12.) The case was removed to this Court, and Defendants have moved separately to dismiss Plaintiff's claims.

## II. City of Tulsa's Motion to Dismiss For Lack of Subject Matter Jurisdiction

The City of Tulsa moves to dismiss Plaintiff's claims regarding negligent training and supervision of Moudy pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") because Plaintiff did not comply with the notice provisions of the Oklahoma Governmental Tort Claims Act ("GTCA").

### A. Relevant Standard

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* Second, a party "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Stuart*, 271 F.3d at 1225. In reviewing a factual attack on the existence of subject matter jurisdiction, a court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to consider affidavits and other documents or conduct an evidentiary hearing to resolve disputed jurisdictional facts. *See Stuart*, 271 F.3d at 1225; *Holt*, 46 F.3d at 1003. "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion [for summary judgment]." *Holt*, 46 F.3d at 1003.

The City of Tulsa fails to specify whether its attack on subject matter jurisdiction is facial or factual. The City of Tulsa has attached Plaintiff's Notice, (*see* Pl.'s Notice, Ex. 1 to City of Tulsa's Mot. to Dismiss), indicating that the City of Tulsa is going beyond the mere face of the Amended Petition in challenging subject matter jurisdiction. Further, the City of Tulsa's argument is premised upon allegedly insufficient allegations in the Notice. (*See* City of Tulsa's Mot. to Dismiss 6 ("There is no information in the notice that would alert [the City of Tulsa] that Plaintiff was claiming damages as a result of the negligent training and supervision of Officer Moudy or the unnamed police officers at the scene."); City of Tulsa's Reply in Support of Mot. to Dismiss 9 ("[Plaintiff] makes no mention of any matters relating to negligent training or supervision [in her

Notice]."*).*) Analysis of this argument necessarily requires review of the Notice. The Court therefore construes the City of Tulsa's motion as a factual attack on subject matter jurisdiction.[1]

### B. Compliance with GTCA Notice Requirement

It is well-established that the GTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. *See Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009). In order to recover under the GTCA, "[a]ny person having a claim against the state or a political subdivision within the scope of [the GTCA] shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages." Okla. Stat. tit. 51, § 156(A). Claims against the state or a political subdivision must be in writing and presented within one year of the date the loss occurs or such "claim . . . shall be forever barred." *Id.* § 156(B). Section 156(E) of the GTCA provides in pertinent part:

> The written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, and the name, address and telephone number of any agent authorized to settle the claim. Failure to state either the date, time, place and circumstances and amount of compensation demanded shall not invalidate the notice unless the claimant declines or refuses to furnish such information after demand by the state or political subdivision. . . .

However, "strict compliance with the notice of claim provisions of [section] 156 is not required." *Wallace v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 15 P.3d 985, 987 (Okla. Civ. App. 2000). Rather, "[s]ubstantial compliance with the notice provision of the GTCA is sufficient when the political

---

[1] The City of Tulsa moves the Court to consider the Notice without converting its Motion to Dismiss to a motion for summary judgment. (*See* City of Tulsa's Mot. to Dismiss 1.) The Court grants this request. As noted above, the Court may consider matters outside the complaint in analyzing a factual attack on its subject matter jurisdiction, and a court's "reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion [for summary judgment]." *Holt*, 46 F.3d at 1003.

4

subdivision is not prejudiced, and the provided information satisfies the purposes of the statutory notice requirement." *Id.* (citing *Mansell v. City of Lawton*, 901 P.2d 826, 830 (Okla. 1995)); *Strong v. Okla. City Pub. Sch., Indep. Sch. Dist. No. 89*, 942 P.2d 538, 540 (Okla. Civ. App. 1997). The purposes of the GTCA include: "(1) prompt investigation of the claim; (2) opportunity to repair any dangerous condition; (3) quick and amicable settlement of meritorious claims; and (4) fiscal planning to meet any possible liability." *Wallace*, 15 P.3d at 987 (citing *Mansell*, 901 P.3d at 830).

> Plaintiff's Notice states as follows:
>
> Date: September 15, 2007;
> Time: evening, between 7 and 9 pm;
> Place: 13926 E. 23rd Pl., Tulsa, OK
>
> Circumstances: Employees of the City of Tulsa police department wrongfully entered a residence without warrant and other lawful authority, frightened and disturbed the occupants, including the claimants, and when claimant Cecilia Lopez protested their actions, wrongfully arrested and/or cause [sic] her to be arrested on false and bogus charges in the presence of her minor child, [R.L.]. Said employees also abandoned [R.L.] at a crime scene and failed to provide for her care. All this caused damage to the claimants and was in violation of the common law of Oklahoma.
>
> Amount of Compensation Claimed: $175,000.00 for each claimant or the statutory maximum.

(Pl.'s Notice, Ex. 1 to City of Tulsa's Mot. to Dismiss.) The Notice also provided the relevant contact information as required in section 156 of the GTCA.

The City of Tulsa argues that the Notice is deficient because it does not specifically mention Plaintiff's claims related to the negligent training and supervision of Moudy and/or other police officers. In a conclusory statement, and without any additional support, the City of Tulsa contends that it has "been prejudiced by not having any idea that [Plaintiff's] claims for negligence covered training and supervision of unnamed officers at the scene." (City of Tulsa's Mot. to Dismiss 7.) The

5

City of Tulsa's argument is therefore based upon the notion that in order to "substantially comply" with the notice requirements of the GTCA, Plaintiff must explicitly mention each legal theory of relief. Given the lack of support advanced by the City of Tulsa for this proposition, the Court rejects any such contention. Further, the notice requirements outlined in § 156 of the GTCA fail to require explicit mention of every legal basis of relief. Rather, a plaintiff is only required to include "the date, time, place and circumstances of the claim," Okla. Stat. tit. 51, § 156, which was provided in this case. Finally, the City of Tulsa has not adequately demonstrated that Plaintiff's Notice caused it prejudice or somehow thwarted the underlying purposes of the GTCA. The Court accordingly denies the City of Tulsa's motion to dismiss Plaintiff's claims based on negligent training and supervision pursuant to Rule 12(b)(1).

## III.     City of Tulsa's Motion to Dismiss for Failure to State a Claim

In support of its motion to dismiss for failure to state a claim, the City of Tulsa makes the following arguments: (1) Plaintiff's §1983 claim should be dismissed because Plaintiff has failed to plead the minimum requirements for such a claim; and (2) Plaintiff's reckless infliction of emotional distress claim should be dismissed because such claim is not cognizable under the GTCA.

### A.     Relevant Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ]

6

[his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### B. Section 1983 Claim

Under § 1983, a municipality, such as the City of Tulsa, may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments cannot be sued under a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs. of City*

7

*of New York*, 436 U.S. 658, 690-91 (1978); *Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 877 (10th Cir. 1993) ("The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution."). Specifically, "to establish municipal liability [under § 1983], a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). The official policy requirement permits courts to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action from which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

A plaintiff can demonstrate a "municipal custom or policy" through: an officially promulgated policy; a custom or persistent practice; deliberately indifferent training that results in the violation of a plaintiff's federally protected rights; a single decision by an official with final decision-making authority; or ratification by an official with final decision-making authority of subordinates' decisions. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010); *Smith v. Barber*, 195 F. Supp. 2d 1264, 1271, n.2 (D. Kan. 2002). In this case, Plaintiff's claim of municipal liability is based on the alleged existence of wrongful policies and practices (*see* Am. Pet. ¶ 10), the City of Tulsa's failure to properly train and supervise its officers (*see id.* ¶ 11), and/or the City of Tulsa's ratification of Moudy's allegedly unconstitutional conduct (*see id.* ¶ 12). The City of Tulsa argues that Plaintiff's § 1983 claim against it should be dismissed because Plaintiff's Amended Petition fails to make sufficient allegations for the imposition of municipal liability.

The Court finds the City of Tulsa's position well-founded. First, Plaintiff seeks to impose municipal liability under § 1983 on the basis of a single incident – namely, Moudy's allegedly wrongful arrest of her. Ordinarily, however, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). "In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Pembaur*, 475 U.S. at 483-85; *Butler*, 992 F.2d at 1055 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [*Monell*] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")). Plaintiff has not made such an allegation in her Amended Petition. Specifically, although the Amended Petition makes a conclusory statement with regard to the "policies and practices of the City of Tulsa," (Am. Pet. ¶ 10), there is no allegation that said policies and practices can be attributed to a municipal policymaker, or that such policies and practices even caused the incident in question. *See Jenkins,* 81 F.3d at 994.

Moreover, even assuming that Plaintiff's allegation of a single incident of unconstitutional activity is sufficient to impose liability on the City of Tulsa, the Court finds that Plaintiff's Amended Petition does not contain "enough facts to state a claim [for § 1983 municipal liability] that is plausible on its face." *Schneider*, 493 F.3d at 1177. As outlined above, the Amended Petition makes the following allegations regarding the City of Tulsa:

9

> 10. Further, the policies and practices of the City of Tulsa regarding entry into a home and dealing with citizens in this circumstance were negligent, reckless and/or were deliberately indifferent to the rights of citizens, including [P]laintiff.
>
> 11. Moreover[,] the training and supervision of the police officers, including [D]efendant Moudy, by the City of Tulsa were also negligent, reckless and/or taken with deliberate indifference.
>
> 12. Further, the City of Tulsa has ratified the actions of [D]efendant Moudy so as to be responsible for his intentional and/or deliberately indifferent wrongful acts with regard to [P]laintiff.

(Am. Pet. ¶¶ 10-12.) The Court finds that these allegations are conclusory and fail to identify a particular policy or custom that was a moving force behind the constitutional violation alleged in the Amended Petition. *See Littrell v. Davis Cnty.*, No. 1:05cv30, 2007 WL 583336, at *5 (D. Utah Feb. 22, 2007) (dismissing a plaintiff's § 1983 claim against county when complaint only made "conclusory" allegations regarding a county policy and "[did] not identify a policy or custom that would be a moving force behind the constitutional deprivation alleged in the [c]omplaint"). Without such an allegation, the Amended Petition fails to "inform [the City of Tulsa] of the actual grounds of the claim against [it]." *Robbins*, 529 F.3d at 1247. Further, the Amended Petition does not clearly allege that Moudy's actions were taken in accordance with a City of Tulsa policy or custom, which is necessary in order for Plaintiff's claim to survive. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (stating that plaintiff must show "a direct causal link between the policy or custom and the injury alleged" in order to establish municipal liability under § 1983); *Canady v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, No. 02-3422, 2003 WL 21399030, at *1 (10th Cir. June 18, 2003) (affirming district court's dismissal of § 1983 claim against municipality when complaint did not allege that "[police] officers were acting to any official policy or custom of the municipality").

Although a "municipal custom or policy" may also be established through inadequate training, *see Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) ("In the absence of an explicit policy or an entrenched custom, 'the inadequacy of police training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact.'"), Plaintiff's allegation regarding the City of Tulsa's failure to adequately train its police officers is not enough to state a claim for municipal liability under § 1983. Plaintiff does not allege any causal nexus between the alleged failure to train and the alleged constitutional deprivation, which is necessary for her claim. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005) (stating there must be a causal nexus between the alleged failure to train and the alleged injury – namely, the "identified deficiency in [the] training program must be closely related to the ultimate constitutional injury") (internal citations and quotations omitted). Further, Plaintiff's inadequate training allegation is conclusory in nature and merely recites boilerplate language without providing any supporting factual allegations. *See Martin v. Dist. of Columbia*, - - - F. Supp. 2d - - - -, 2010 WL 2628711, at *3 (D.D.C. July 1, 2010) (granting city's motion to dismiss § 1983 claim based on inadequate training when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations"); *cf. Jordan by Jordan v. Jackson*, 15 F.3d 333, 340 (4th Cir. 1994) (finding plaintiff's complaint stated a claim against county under § 1983 when complaint alleged existence of several specific customs or policies, including (1) "a policy of providing inadequate training to [county] employees both on how to determine whether a summary removal was proper and on the statutory procedural requirements following removal"; and (2) a practice of training employees in

11

a manner that "encouraged the removal of any child left alone, regardless of the circumstances"); *Anderson v. City of Blue Island*, No. 09C5158, 2010 WL 1710761, at *2 (N.D. Ill. April 28, 2010) (finding plaintiff's § 1983 claim survived city's motion to dismiss when plaintiff's allegations of inadequate training "highlight[ed] a *specific* deficiency in the training provided to [police officers] he encountered on the night in question and present[ed] a plausible causal connection between the training and constitutional deprivation he allegedly suffered") (emphasis added). Accordingly, because Plaintiff has provided only a "formulaic recitation" of the elements of a § 1983 claim based on failure to train, *see Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 555), Plaintiff's inadequate training allegation is insufficient to withstand the City of Tulsa's Motion to Dismiss.

Finally, the Court rejects Plaintiff's "ratification" argument supporting her § 1983 claim against the City of Tulsa. *See Brammer-Hoelter*, 602 F.3d at 1189 ("Municipal liability may also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval."). Plaintiff's Amended Petition fails to allege any facts regarding an "affirmative approval" of Moudy's actions, which is required in order to impose municipal liability under a "ratification" theory. *See Patrick v. City of Overland Park, Kan.*, 937 F. Supp. 1491, 1499 (D. Kan. 1996) ("In order to impose liability under § 1983 on a theory of ratification, plaintiff must allege more than mere acquiescence by a final policymaker in a subordinate's actions . . . [and instead] must allege . . . that the final policymaker affirmatively approved the particular action of the subordinate." (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993)). Moreover, the Amended Petition does not allege that the "ratification

[was] the moving force or cause of the alleged constitutional violation," which is also required. *Brown v. Whitman*, 651 F. Supp. 2d 1216, 1232 (D. Colo. 2009) (internal citations omitted). Therefore, for the reasons outlined herein, the Court grants the City of Tulsa's motion to dismiss Plaintiff's § 1983 claim.

### C.    Reckless Infliction of Emotional Distress Claim

The City of Tulsa contends that Plaintiff cannot bring suit under the GTCA for reckless infliction of emotional distress because the City of Tulsa can only be held liable for "torts of its employees acting within the scope of their employment," and it has no liability "for any act or omission of any employee acting outside the scope of his employment." *See* Okla. Stat. tit. 51, § 153(A). As defined by the GTCA, "scope of employment" means "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority. . . ." *Id.* § 152(12). Accordingly, "[w]hen a tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of employees, there can be no liability against a political subdivision in a suit based on the GTCA." *Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1164-65 (Okla. 2009). The City of Tulsa moves to dismiss Plaintiff's claim for reckless infliction of emotional distress, contending that this claim necessarily excludes good faith and places Moudy outside the scope of his employment. Therefore, according to the City, Plaintiff's claim for reckless infliction of emotional distress is outside the waiver of immunity provided by the GTCA. In response, Plaintiff contends that although the tort of *intentional* infliction of emotional distress would place Moudy outside the scope of his employment, the tort of *reckless* infliction of emotional distress does not.

13

Although Plaintiff seemingly contends that "reckless" infliction of emotional distress and "intentional" infliction of emotional distress constitute two completely different torts, the distinction between these two terms originates in how the first element of the underlying tort is demonstrated. Specifically, "[t]o recover damages for intentional infliction of emotional distress[,] a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005) (applying Oklahoma law) (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law) and *Computer Publ'n, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)). Therefore, rather than embodying two completely different torts with distinct elements of proof, a plaintiff may prove the first element of the tort of intentional infliction of emotional distress by showing that defendant acted either intentionally or recklessly.[2]

In explaining the inability of a plaintiff to bring a claim of outrage against a municipality under the GTCA, the Oklahoma Supreme Court has implied that this prohibition applies whether the underlying tort is demonstrated by intentional conduct or reckless conduct. Specifically, in *Fehring v. State Insurance Fund*, 19 P.3d 276 (Okla. 2001), the Oklahoma Supreme Court stated the following in discussing the case of *McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996):

> *McMullen* involved a suit against another GTCA-covered City for the tort of outrage or intentional infliction of emotional distress. In *McMullen*, the [Court of Civil Appeals] held: in that the tort of outrage or intentional infliction of emotional distress

---

[2] "'[R]ecklessness' in the first element includes actions that are in 'deliberate disregard of a high degree of probability that emotional distress will follow.'" *Estate of Trentadue ex rel. Aguilar*, 397 F.3d at 856 (applying Oklahoma law) (citing Restatement (Second) of Torts § 46 cmt. I).

14

> is viable only when it is shown – by extreme and outrageous conduct – a defendant intentionally (*or, at a minimum, recklessly*) cases severe emotional distress, it was not possible to have a viable GTCA claim against the City because intentional infliction of emotional distress cannot be shown if the defendant acted in good faith.

*Fehring*, 19 P.3d at 284 (emphasis added). *Fehring*'s description of the relationship between the GTCA and the tort of outrage suggest that, whether demonstrated through intentional or reckless conduct, it is not possible to bring such a claim against a municipality under the GTCA.

The Court is additionally persuaded that this is the correct result by the *Fehring* court's statement that "[a]cts performed with reckless disregard for an individual's rights also lack good faith and are outside the scope of employment under the provisions of the GTCA." *Id.* at 285. Although not stated in the context of the tort of outrage, the Court finds that this statement supports a finding that Plaintiff's claim for "reckless infliction of emotional distress" necessarily includes a lack of good faith and is therefore outside the scope of employment pursuant to the GTCA. Therefore, the Court grants the City of Tulsa's Motion to Dismiss as to Plaintiff's claim for "reckless infliction of emotional distress."

## IV.     Moudy's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Moudy argues that this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. As noted above, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can take one of two forms – a facial attack on the allegations included in the complaint or an attack on the facts upon which subject matter jurisdiction is based. *See Stuart*, 271 F.3d at 1225. Moudy's arguments go beyond the allegations of Plaintiff's Amended Petition and the Court therefore construes Moudy's motion as a factual attack.

"Generally, the *Rooker-Feldman* doctrine precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably

intertwined with a state-court judgment.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)). The Supreme Court has clarified the narrow scope of the doctrine, stating that it is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In light of *Exxon*, the Tenth Circuit has concluded that "the type of judicial action barred by *Rooker-Feldman* [ ] consists of a review of the proceedings already conducted by a lower tribunal to determine whether it reached its result in accordance with law." *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006). Thus, *Rooker-Feldman* does "not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Id.* at 1145. Moreover, Tenth Circuit cases have "emphasized the relief sought by federal-court plaintiffs," *see PJ ex rel. Jensen*, 603 F.3d at 1193, and have suggested that courts should "as[k] whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*," *Mo's Express*, *LLC*, 441 F.3d at 1237.

The basis for Moudy's motion to dismiss pursuant to the *Rooker-Feldman* doctrine is less than clear. It appears from the briefing that, as a result of Plaintiff's arrest on September 15, 2007, Plaintiff entered a plea of *nolo contendere* before the state court, and that subsequent to such plea, the state court entered an Expungement Order. However, Moudy fails to clearly identify the relevant state-court judgment from which Plaintiff seeks relief in this case, which is the starting point for any

16

*Rooker-Feldman* doctrine analysis. *See PJ ex rel. Jensen*, 603 F.3d at 1193 ("Given [the *Rooker-Feldman*] framework, we first identify the two state-court judgments adverse to [plaintiff] that neither the federal district court nor this court may review or undo in any way . . . ."). Further, Moudy has not submitted any relevant documents to this Court regarding the state court proceedings, so the Court is without information as to the nature of the plea or the contents of the Expungement Order.[3] Without such a record, the Court is unable to find that Plaintiff's claims implicate the *Rooker-Feldman* doctrine. Moudy's motion to dismiss Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine is therefore denied.

**V.    Moudy's Motion to Dismiss for Failure to State a Claim**

Moudy moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), arguing: (1) Plaintiff's claims for false imprisonment, false arrest, reckless infliction of emotional distress, and general negligence should be dismissed under the GTCA because they are based in negligence; (2) Plaintiff's false arrest claim should be dismissed because Plaintiff did not allege the absence of probable cause with regard to her arrest; and (3) Plaintiff has failed to allege sufficient facts supporting her § 1983 claim. The Court applies the relevant 12(b)(6) standard outlined above. *See supra Section* III.A.

---

[3] Exhibit 1 to Moudy's motion states "Expungement Order to be filed with Moudy's Motion to Seal Document," suggesting that the submission of the Expungement Order was forthcoming. (Ex. 1 to Moudy's Mot. to Dismiss.) However, Moudy never filed a Motion to Seal Document before this Court and did not supplement his motion to dismiss with the Expungement Order. Because Moudy failed to provide any documentation regarding the *nolo contendere* plea or the Expungement Order, the Court denies Moudy's request to take judicial notice of such matters. (*See* Moudy's Mot. to Dismiss 1.)

17

### A.     "Negligence" Claims

Moudy moves to dismiss Plaintiff's claims for false imprisonment, false arrest, reckless infliction of emotional distress, and general negligence, apparently contending that all such claims allege a form of negligence and are therefore barred by the GTCA. Specifically, in support of this argument, Moudy offers the Court basic law on the GTCA and provides a mere one sentence of argument: "All claims for negligence against Defendant Moudy in his individual capacity should be dismissed." (Moudy's Mot. to Dismiss 6.)  In her response brief, Plaintiff states as follows:

> Plaintiff affirmatively states that she is not seeking to assert any claims of negligence against [Moudy] in his individual capacity. To the extent [P]laintiff's [A]mended [P]etition alleges negligence she is solely asserting the claims to show that [City of Tulsa] is liable for the negligence of its employees acting within the scope of their employment. It was not [P]laintiff's intent to sue the individual [Moudy] for negligent acts committed within the scope of his employment within the meaning of GTCA."

(Pl.'s Resp. to Moudy's Mot. to Dismiss 6-7.)   Given Plaintiff's representation and Moudy's remarkable lack of argument, the Court denies Moudy's motion to dismiss Plaintiff's claims for false imprisonment, false arrest, reckless infliction of emotional distress, and general negligence pursuant to the GTCA.[4]

---

[4] In addition to moving to dismiss Plaintiff's infliction of emotional distress claim to the extent such claim is based on negligence, Moudy also moves to dismiss this claim to the extent it is based on intentional conduct, arguing Plaintiff fails to plead sufficient facts. (*See* Moudy's Mot. to Dismiss 6-7.)  The Court denies said motion. Although Plaintiff is unable to assert a claim of outrage against the City of Tulsa pursuant to the GTCA, *see supra* Section III.C., the GTCA does not prohibit Plaintiff from asserting such a claim against Moudy in his individual capacity for intentional/reckless conduct. Plaintiff has alleged sufficient facts in the Amended Complaint to permit any such claim to proceed at this stage. (*See* Am. Pet. 2 (alleging Moudy wrongfully arrested Plaintiff and then abandoned Plaintiff's minor child, leaving said child "at the scene" without any supervision).)

18

### B. False Arrest Claim

Moudy contends that Plaintiff failed to allege that her arrest was not the result of probable cause. (*See* Moudy's Mot. to Dismiss 7-8.) Although Moudy does not specifically state what claim he seeks to dismiss on the basis of such argument, it appears from Moudy's briefing that this argument goes to Plaintiff's claim for "false arrest." The Court denies Moudy's request to dismiss Plaintiff's false arrest claim on this basis, as Plaintiff's Amended Petition alleges that she was "wrongfully arrested" and/or "illegally arrested on false and bogus charges . . ." (Am. Pet. ¶ 6.) The Court finds such allegations sufficient to support a claim for false arrest.

### C. Section 1983 Claim

Moudy contends Plaintiff's § 1983 claim against him should be dismissed for failure to state a claim upon which relief can be granted. In support of this position, Moudy offers little in terms of argument or legal support. Specifically, Moudy argues Plaintiff's § 1983 claim should be dismissed because she failed to allege "a lack of probable cause for her arrest" and has also failed to plead any facts regarding "why the officers entered the residence." (*See* Moudy's Mot. to Dismiss 8-9). The Court rejects this argument. The Amended Petition alleges that Moudy "wrongfully entered a residence without a warrant or other lawful authority" and then "wrongfully arrested and/or caused [Plaintiff] to be illegally arrested on false and bogus charges." (Am. Pet. ¶ 6.) Although the term "probable cause" is not used in the Amended Petition, these allegations are sufficient to infer a lack of probable cause. Moudy's motion to dismiss Plaintiff's § 1983 claim is therefore denied.[5]

---

[5] Both Moudy and the City of Tulsa also move to dismiss any claim brought on behalf of R.L. (*See* City of Tulsa's Mot. to Dismiss 9; Moudy's Mot. to Dismiss 9.) Because Plaintiff has indicated that the Amended Petition does not assert any claims on behalf of R.L., (*see* Pl.'s Resp. to City of Tulsa's Mot. to Dismiss 11; Pl.'s Resp. to Moudy's Mot. to Dismiss 7), the Court need

## V.     Conclusion

For the reasons outlined here, Defendant City of Tulsa's Motion to Dismiss (Doc. 9) is GRANTED IN PART and DENIED IN PART.  Specifically, the Court grants: (1) the City of Tulsa's motion to dismiss Plaintiff's § 1983 claim and reckless infliction of emotional distress claim pursuant to Rule 12(b)(6); and (2) the City of Tulsa's motion to consider Plaintiff's Notice without converting the motion to dismiss to one for summary judgment.  The Court denies the City of Tulsa's motion to dismiss Plaintiff's claims regarding negligent training and supervision for lack of subject matter jurisdiction.

Defendant Christopher Moudy's Motion to Dismiss and Motion Requesting the Court to Judicially Notice Nolo Contendere Plea in State Court (Doc. 26) is DENIED.

**SO ORDERED this 27th day of September, 2010.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

not address this issue.